UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FERDINAND BERNARD BRANCH, JR.                    CIVIL ACTION

VERSUS                                           NO. 21-603

VINCENT LOBELLO, ET AL.                          SECTION "R" (4)

## ORDER AND REASONS

Before the Court is defendant Judge Vincent Lobello's motion to dismiss plaintiffs' claims against him.[1]  Plaintiffs Ferdinand Branch, Jr., Liryca Beville, and Gaynelle Neville oppose the motion.[2]  For the following reasons, the Court grants defendant's motion, and dismisses all claims against Lobello.

## I.    BACKGROUND

Plaintiffs in this case are three alleged members of the Tchou Tchouma Tchoupitoulas Nation, who, proceeding *pro se*, assert that they have been falsely charged in Louisiana state court with forgery, La. Rev. Stat. § 14:72, injuring public records, La. Rev. Stat. § 14:132, and filing a false lien, La. Rev.

---

[1]     R. Doc. 30.
[2]     R. Doc. 35.

1

Stat. § 14:133.6.[3]   On March 31, 2021, plaintiffs filed suit in this court, alleging, *inter alia*, that a sheriff's deputy, John Morse, led twelve FBI officers into their home and arrested them for crimes they did not commit.[4] They further allege that Morse caused Marietta Barnes, the "Director of Recording & Elections," to destroy certain public records from the "public registry."[5]   They assert that they did not commit the charged crimes,[6] and that they "are not subject to State law, as Citizens of the United States[,] not United States of America."[7]

Throughout their complaint, plaintiffs name various state officials, three of whom have been served and made defendants in this matter: (i) Judge Vincent Lobello, the state judge presiding over plaintiffs' criminal proceedings in the Twenty-Second Judicial District Court of Louisiana; (ii) Warren Montgomery, the District Attorney for the Twenty-Second Judicial District of Louisiana; and (iii) Marietta Barnes, a deputy clerk of the Twenty-Second Judicial District Court.   Plaintiffs ask the Court to dismiss the state

---

[3]   R. Doc. 5 at 1 (Complaint).
[4]   *Id.* at 2.
[5]   *Id.*
[6]   *Id.* at 5-7.
[7]   *Id.* at 8.

action,[8] and seek various other forms of declaratory, injunctive, and monetary relief.

On August 6, 2021, defendant Vincent Lobello moved under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all of plaintiffs' claims against him.[9]  Defendant contends that plaintiffs' claims should be dismissed on the grounds of Eleventh Amendment immunity, absolute judicial immunity, *Younger* abstention, and the *Rooker-Feldman* doctrine.  Plaintiffs oppose the motion.[10]

The Court considers the motion below.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to the Court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187

---

[8]    *Id.* at 10.

[9]    R. Doc. 30.

[10]    R. Doc. 35.

(2d Cir. 1996)).   Because a 12(b)(1) motion is jurisdictional, the Court considers such a motion "before addressing any attack on the merits," *see In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012), in order to "prevent[ ] a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* at 286-87 (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

In assessing a challenge to its subject matter jurisdiction, the Court "may dismiss . . . on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Furthermore, plaintiff has the burden of demonstrating that subject matter jurisdiction exists. *See Celestine v. TransWood, Inc.*, 467 F. App'x 317, 318 (5th Cir. 2012) (per curiam) (citing *Ramming*, 281 F.3d at 161).

Under "firmly established" U.S. Supreme Court precedent, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).   A federal court lacks jurisdiction over a claim that "clearly appears to be immaterial and made solely for the purpose of obtaining

4

jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* A court may dismiss a claim for lack of subject matter jurisdiction based on the inadequacy of the alleged federal claim "only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the U.S. Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (citing *Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 414 U.S. 661, 666 (1974)).

### B.   Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d

228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.  DISCUSSION

Plaintiffs are proceeding *pro se*, so their pleadings are to be construed liberally. *See Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). But this does not mean that the Court "will invent, out of whole cloth, novel arguments on behalf of a pro se plaintiff in the absence of meaningful, albeit imperfect, briefing." *Jones v. Alfred*, 353 F. App'x 949, 952 (5th Cir. 2009). Here, in reviewing the pleadings, the Court finds that plaintiffs assert claims

for declaratory relief, injunctive relief, and money damages, against Judge Lobello.  The Court first addresses plaintiffs' claims for declaratory and injunctive relief, and then proceeds to their claims for money damages.

## A.    Declaratory and Injunctive Relief

Plaintiffs primarily seek declaratory and injunctive relief from the state criminal proceedings against them.

To the extent that plaintiffs seek to enjoin or otherwise interfere with the ongoing state-court proceedings, the Court's authority is limited by the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971).  Under *Younger*, the Court must decline to exercise jurisdiction if the requested relief would interfere with an ongoing state criminal proceeding.  The Court must decline to exercise jurisdiction over a state criminal defendants' claims when three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges."  *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)) (internal quotation marks omitted).

First, the Court must determine whether the federal proceeding "interfere[s] with an 'ongoing state judicial proceeding.'" *Id.* at 716 (quoting *Middlesex*, 457 U.S. at 432). "Interference is established 'whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *Id.* at 717 (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)). Here, plaintiffs' complaint explicitly asks this Court to "dismiss the State action."[11] Plaintiffs also seek other relief that would plainly amount to interference in the state proceedings. For instance, they seek "[i]njunctive relief preventing the defendants et al[.] from [causing] further irreparable harm to the petitioners," and, to that end, ask the Court to "terminate or quash the charges against" them.[12] A federal injunction preventing state criminal prosecution is prototypical of the class of claims precluded by *Younger*. *See Younger*, 401 U.S. at 40-41. Plaintiffs here also seek a "Declaratory Judgment against the State actions," as well as a "Declaratory Judgement that petitioners are out of the jurisdiction of State actors at all times unless some crime had been committed."[13] For *Younger* purposes, declaratory relief is no different from injunctions. As the U.S.

---

[11]   R. Doc. 5 at 10.
[12]   *Id.* at 3.
[13]   *Id.* at 10.

Supreme Court explained in a companion case to *Younger*, "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 72 (1971). For these reasons, the first *Younger* condition is satisfied.

Second, the Court must consider whether the State has "an important interest in regulating the subject matter of the claim." *Bice*, 677 F.3d at 717. Of course, "[t]he state has a strong interest in enforcing its criminal laws." *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984). Here, plaintiffs contest their state charges for injury to public records,[14] forgery,[15] and filing a false lien against a law-enforcement or court officer.[16] These are all crimes under Louisiana law. *See* La. Rev. Stat. §§ 14:132; 14:72; 14:133.6. The Court therefore finds that Louisiana has a strong interest in regulating the subject matter of plaintiffs' claims.

Third, the federal plaintiffs must have "an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice*, 677 F.3d at 716 (quoting *Middlesex*, 457 U.S. at 432). Here, plaintiffs indicate in their opposition memorandum that their primary objections to the state charges

---

[14]    *Id.* at 5.
[15]    *Id.* at 6.
[16]    *Id.*

are evidentiary, not constitutional, in nature.  For instance, they contend that Lobello has "ignore[d] evidence," and "ordered dismissals when he never looked at the evidence."[17]  Plaintiffs elsewhere argue that "there is absolutely NO EVIDENCE of them committing th[e] acts alleged," and ask "where is the evidence[?]  [I]t does not exist."[18]  These concerns, regarding the sufficiency of the evidence supporting their criminal charges, are precisely the types of arguments that are properly raised during the course of the state criminal proceedings.  And to the extent that plaintiffs' arguments are constitutional, the state court may hear and rule on those claims as well.  *See Younger*, 401 U.S. at 49 ("A [criminal] proceeding was already pending in the state court, affording [the plaintiff] an opportunity to raise his constitutional claims."); *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 431 ("Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." (emphasis in original)). Furthermore, if plaintiffs are ultimately convicted, they will have the opportunity to appeal the decision, and to argue any evidentiary or constitutional errors that they believe the trial court made.  The Court therefore finds that the third and final *Younger* condition is satisfied.

---

[17]    R. Doc. 35 at 3.

[18]    *Id.* at 3-4.

If the three conditions for *Younger* abstention are met, "the 'doctrine requires that federal courts decline to exercise jurisdiction' over the lawsuit unless 'certain narrowly delimited exceptions to the abstention doctrine apply.'" *Blakely v. Andrade*, 360 F. Supp. 3d 453, 467 (N.D. Tex. 2019) (quoting *Bice*, 677 F.3d at 716).  As to the exceptions, the Court may disregard the *Younger* doctrine when:

> (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) application of the doctrine was waived.

*Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citations omitted).

Here, plaintiffs do not contend that they qualify for any of the exceptions to *Younger*, and the Court does not find that any exception applies.  First, plaintiffs make no allegation that the state-court proceeding was brought in bad faith or that the state officials are at all "motivated by a desire to harass." *Juidice v. Vail*, 430 U.S. 327, 338 (1977).  Indeed, courts have largely limited application of the exception for bad-faith prosecutions to extraordinary situations, involving, for instance, repeated arrests or prosecutions, retaliatory prosecutions, prosecutions intended solely to attract publicity, or "seizure of materials under a statute of questionable

constitutionality." Erwin Chemerinsky, Federal Jurisdiction, § 13.5 (7th ed. 2016); *see, e.g.*, *Dombrowski v. Pfister*, 380 U.S. 479 (1965); *Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988); *Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir.) (per curiam), *cert. denied*, 452 U.S. 916 (1981); *Shaw v. Garrison*, 467 F.2d 113 (5th Cir.), *cert. denied*, 409 U.S. 1024 (1972). There are no such facts alleged here. The first exception does not apply.

Second, there is no indication that the Louisiana criminal statutes that plaintiffs are charged with violating are "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph." *Younger*, 401 U.S. at 53-54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)). The state laws at issue pertain to the relatively uncontroversial crimes of forgery, injury to public records, and the filing of false liens. Plaintiffs do not allege, and this Court does not find, any issues relating to the underlying criminal statutes, much less issues of constitutional dimension. The second exception does not apply.

Third, the state government has not waived the *Younger* doctrine. On the contrary, defendant Lobello here expressly argues for dismissal of plaintiffs' claims, partially on the grounds of *Younger*.[19] Accordingly, the third exception does not apply.

---

[19]    R. Doc. 30-1 at 6-9.

Because the three conditions for *Younger* abstention are satisfied, and because no exception to *Younger* abstention applies, the Court must decline to exercise jurisdiction over plaintiffs' claims for injunctive and declaratory relief against Judge Lobello. Those claims are accordingly dismissed without prejudice. *See Manning v. Republic of Tex.*, No. 16-265, 2016 WL 1242649, at *1 (N.D. Tex. Mar. 30, 2016) (dismissing claims without prejudice on the grounds of *Younger* abstention); *Novie v. Vill. of Montebello*, No. 10-9436, 2012 WL 3542222, at *14 (S.D.N.Y. Aug. 16, 2012) (same).

The Court notes that defendant Lobello also moves to dismiss plaintiffs' claims against him under the *Rooker-Feldman* doctrine.[20] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 462 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). But *Rooker-Feldman* bars federal-court review of state-court decisions and judgments rendered before the commencement of the federal action. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, c, 284 (2005) ("The *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered *before the district court proceedings commenced* and inviting district court review and rejection of those judgments." (emphasis added)). Here, plaintiffs have not identified or

---

[20]     *Id.* at 9-10.

sought review of a prior state-court decision or judgment.  They instead seek to enjoin ongoing state proceedings.  The relief that plaintiffs request is the purview of *Younger*, not *Rooker-Feldman*.  The Court finds that the *Rooker-Feldman* doctrine does not apply.

### C.    Claims for Money Damages

In their complaint, plaintiffs make one reference to 42 U.S.C. § 1983, which authorizes a broad range of remedies, including equitable relief and money damages.  *See* Erwin Chemerinsky, Federal Jurisdiction § 8.11 (7th ed. 2016).  Because the Court has already found that plaintiffs are not entitled to declaratory or injunctive relief as to Judge Lobello, the Court addresses their § 1983 claim only insofar as it seeks money damages.

The law that dictates the viability of plaintiffs' damages claims depends on whether those claims are brought against Judge Lobello in his official capacity or his individual capacity.  As the Supreme Court has explained, "the phrase 'acting in their official capacities,' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."  *Hafer v. Melo*, 502 U.S. 21, 26 (1991). While it is not clear from plaintiffs' pleadings the capacity in which they

purport to sue Judge Lobello, the Court need not decide between the two, because plaintiffs cannot prevail via either avenue.

To the extent that plaintiffs seek to recover damages from Judge Lobello in his official capacity, the Eleventh Amendment to the U.S. Constitution bars their claims. The Eleventh Amendment prohibits suits against a state government by its own citizens, citizens of another state, or citizens of a foreign country. *See* U.S. Const. amend. XI; *Edelman v. Jordan*, 415 U.S. 651 (1974); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996); *In re New York*, 256 U.S. 490 (1921). While the Eleventh Amendment permits "prospective injunctive or declaratory relief against a state,"[21] "[r]etrospective relief in the form of a money judgment in compensation for past wrongs—no matter how small—is barred." *Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988). State-court judges are state actors for the purposes of Eleventh Amendment immunity, *see Davis v. Tarrant Cnty.*, 565 F.3d 214, 228 (5th Cir. 2009), and Louisiana "has not waived its sovereignty within the federal system." *Holliday v. Bd. of Supervisors of LSU Agr. & Mech. Coll.*, 149 So. 3d 227, 229 (La. 2014). Accordingly, to the extent that

---

[21]   Again, plaintiffs' claims for declaratory or injunctive relief in this case are barred as a matter of *Younger* abstention. *See supra.*

plaintiffs purport to sue Judge Lobello in his official capacity, their claims must be dismissed.

To the extent that plaintiffs seek to recover damages from Judge Lobello in his individual capacity, the claims are barred by judicial immunity. It is well-established that, "generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (citations omitted). As the Supreme Court explained 150 years ago, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872). Judicial immunity is overcome only if (i) the challenged action was nonjudicial in nature, or if (ii) the challenged action, though judicial in nature, was taken in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978) (quoting *Bradley*, 80 U.S. (13 Wall.) at 351).

Here, the challenged action—presiding over the state proceedings against plaintiffs—is plainly judicial in nature. Second, there is no "clear absence of . . . jurisdiction." *Id.* Judge Lobello is a judge of the Twenty-Second Judicial District Court of Louisiana, which, by state constitution, has original jurisdiction over all criminal matters. *See* La. Const. art. V § 16(A).

16

Accordingly, any claim for recovery against Judge Lobello in his individual capacity is precluded by Lobello's judicial immunity from suit.

For these reasons, plaintiffs have failed to state a claim for money damages.  *See* Fed. R. Civ. P. 12(b)(6).  Accordingly, all damages claims against Judge Lobello are dismissed with prejudice.

Having dismissed all of plaintiffs' claims against Judge Lobello for money damages, declaratory relief, and injunctive relief, the Court finds that no claims against Judge Lobello remain.  Judge Lobello is hereby dismissed as a defendant in this matter.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss.[22]  Plaintiffs' claims for declaratory and injunctive relief against Judge Vincent Lobello are DISMISSED WITHOUT PREJUDICE.  Plaintiffs' claims for damages against Lobello are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __11th__ day of February, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[22]   R. Doc. 30.

17